# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**CITY OF GRAND RAPIDS**,

    Plaintiff/Counter-Defendant,

vs.

**GRAND RAPIDS POLICE COMMAND OFFICERS ASSOCIATION, MATTHEW JANISKEE**, **KRISTE KIBBEY ETUE-MICHIGAN STATE POLICE AND JEFFREY GETTING-KALAMAZOO COUNTY PROSECUTOR**,

    Defendants,

and

**MATTHEW JANISKEE,**

    Counter-Plaintiff/Cross-Plaintiff/
    Third-Party Plaintiff,

vs.

**CITY OF GRAND RAPIDS**,

    Counter-Defendant,

**KRISTE KIBBEY ETUE-MICHIGAN STATE POLICE and JEFFREY GETTING-KALAMAZOO COUNTY PROSECUTOR**,

    Cross-Defendants,

**DAVID RAHINSKY, DANIEL SAVAGE, DAVID KIDDLE, PETER McWATTERS, and DAVID SCHNURSTEIN**,

    Third-Party Defendants.

_____/

HONORABLE PAUL L. MALONEY

Case No. 1:17-cv-00113-PLM-RSK

MAG. RAY KENT

**AMENDED COMPLAINT FOR DECLARATORY RELIEF**

| | |
|---|---|
| John H. Gretzinger (P28979)<br>Scott E. Dwyer (P33131)<br>Kurt M. Graham (P57910)<br>Mika Meyers, PLC<br>Attorneys for City of Grand Rapids, David Rahinsky, Daniel Savage and David Kiddle<br>900 Monroe Ave NW<br>Grand Rapids, Michigan 49503<br>(616) 632-8027<br><br>Andrew J. Brege (P71474)<br>Johnson, Rosati, Schultz, Joppich PC<br>Attorneys for Peter McWatters and David Schnurstein<br>822 Centennial Way, Suite 270<br>Lansing, MI  48917<br>(517) 886-3800 | Andrew J. Rodenhouse (P73342)<br>Charles C. Newberg (P79025)<br>Rodenhouse Kuipers PC<br>Attorneys for Defendant Matthew Janiskee<br>678 Front Ave., NW, Suite 176<br>Grand Rapids, MI 49504-5300<br>(616) 451-4000<br><br>Timothy J. Dlugos (P57179)<br>White Schneider PC<br>Attorneys for GRPCOA<br>2300 Jolly Road<br>Okemos, MI  48864<br>(517) 349-7744<br><br>Amber D. Beebe (P66466)<br>Attorney for Jeffrey Getting<br>Kalamazoo County Office<br>of Corporate Counsel<br>Kalamazoo County Government<br>201 W. Kalamazoo Avenue<br>Kalamazoo, MI 49007<br>(269) 384-8111 |

_____/

The City of Grand Rapids, by its attorneys, Mika Meyers, PLC, for its Amended Complaint for Declaratory Relief against Defendants Grand Rapids Police Officers Command Officers Association,  Matthew Janiskee, Kriste Kibbey Etue – Director of Michigan State Police, and Jeffrey Getting-Kalamazoo County Prosecutor, states as follows:

## JURISDICTION AND VENUE ALLEGATIONS

1. This is an action seeking a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57 regarding its obligations with respect to certain recordings under the Federal Wiretapping Act, 18 U.S.C. § 2511 and under Michigan Eavesdropping Act, MCL 750.539h.

2. This Court has subject matter jurisdiction because this action arises under the laws of the United States and supplemental jurisdiction over the state statute since it is part of the same case or controversy.

3. The City of Grand Rapids (the "City") is a political subdivision of the State of Michigan located in Kent County.

4. The Grand Rapids Police Officers Association (the "GRPOA") is a labor organization which has its office in Kent County. The GRPOA is the exclusive collective bargaining representative of a collective bargaining unit of non-supervisory City Police Department employees in the classifications of Police Officer and Sergeant.

5. Mr. Adam Ickes is a Grand Rapids Police officer who is represented by the GRPOA.

6. Mr. Thomas Warwick is a Grand Rapids Police Officer who is represented by the GRPOA.

7. The Grand Rapids Police Command Officers Association (the "GRPCOA") is a labor organization which has its office in Kent County. The GRPCOA is the exclusive collective bargaining representative of a collective bargaining unit of supervisory City Police Department employees in the classifications of Police Lieutenant and Police Captain.

8. Mr. Matthew Janiskee is a Grand Rapids Police Lieutenant who is represented by the GRPCOA.

9. Colonel Kriste Kibbey Etue is the Director of the Michigan State Police ("MSP"), which is a governmental entity of the State of Michigan with offices in the Western District of Michigan.

10. Jeffrey Getting ("Prosecutor Getting") is the Prosecutor for the Kalamazoo Prosecutor's Office.

11. Daniel Empson has filed a civil action in Kent County Circuit Court, which is Case No. 17-00203-NI, alleging that he was injured during an automobile collision on November 19, 2016, which is pending before Judge Dennis Leiber.

12. Venue is proper in the Western District of Michigan because the events giving rise to this controversy occurred in this judicial district.

**GENERAL ALLEGATIONS**

13. At approximately 00:33 a.m. on the morning of November 19, 2016, Officer Ickes was dispatched to a personal injury traffic crash at Union Avenue and Avalon Terrace in Grand Rapids. The driver of the car had driven the wrong way down a one way street and had struck a parked car. The driver of the car was Mr. Josh Kuiper, who identified himself to Officer Ickes as a Kent County Assistant Prosecutor. Officer Ickes processed the crash scene and his activities were recorded on the In Car Video (ICV) system and on the body camera worn by Officer Ickes. Officer Ickes did not request Mr. Kuipers to take a PBT test and issued him a citation for driving the wrong way down a one way street. Mr. Kuipers was subsequently transported by Officer Warwick to his home. The UD-10 State of Michigan Traffic Crash Report submitted by Officer Ickes noted that Mr. Kuiper had been drinking and was at fault for the crash.

14. On December 2, 2016, Prosecutor Forsyth called Lieutenant Janiskee to ask why Mr. Kuipers had not been cited for drunk driving. This call was reported to Deputy Chief Daniel Savage who directed a review of the traffic crash report and the body camera footage from Officer Ickes. Deputy Chief Savage also learned that Officer Ickes had called his Watch Commander Lieutenant Janiskee soon after he had arrived at the accident scene. After a review of this information a formal internal investigation was authorized by Police Chief David Rahinsky.

15. The City assigns a command officer to be on duty at all times as Watch Commander. The official duty phone in the Watch Commander's Office at the Grand Rapids Police Department is (616) 456-3604 and is a recorded line. As an initial part of the internal investigation, a copy of the November 18, 2016 phone call to the recorded Watch Commander line from Officer Ickes to Lieutenant Janiskee was secured. This revealed that Officer Warwick was physically present in the Watch Commander's Office when the call was received from Officer Ickes. In that call Officer Ickes advised that "this crash out here is Josh Kuiper from the Prosecutor's Office that's hammered, going the wrong way on union and (inaudible) a parked car." Lieutenant Janiskee advised him to stop talking and call back on "3407." The reference to 3407 is to the unrecorded phone line in the Watch Commander's Office, which is labeled "Non Recorded Line 3407."

16. After reviewing information regarding that phone call, Captain Peter McWatters requested the Grand Rapids Police Department IT liaison to see if the 3407 extension in the Watch Commander's office would have a record on incoming calls (as in what numbers called it or what numbers it called).

17. In response to that inquiry, Captain McWatters was advised that five calls had occurred on the unrecorded line subsequent to the call on the recorded line. Captain McWatters was also advised that there were actually recordings of the unrecorded line. Captain McWatters immediately advised Deputy Chief David Kiddle, who in turn advised Deputy Chief Daniel Savage and Chief Rahinsky. Prior to receiving that information, the Police Department was not aware that the unrecorded line was actually being recorded.

18. The five phone calls on Line 3407 that had been inadvertently recorded included three from Officer Ickes to Lieutenant Janiskee and two from Officer Warwick to Lieutenant

Janiskee. After receiving the advice of legal counsel, these five phone calls were reviewed as part of the internal investigation. Subsequent to reviewing these phone calls, Chief Rahinsky requested the Michigan State Police initiate an investigation into possible criminal actions of the officers.

19. As part of its representation of Lieutenant Janiskee in the investigation regarding his activities, the GRPCOA has contended that the information contained in the five phone calls on Line 3407 could not be used in any disciplinary process or released in any form to outside parties on the basis that such actions would violate the Federal Wiretapping Act and the Michigan Eavesdropping Act.

20. The City's investigation materials, which would include the five phone calls on Line 3407, has been requested to be produced by several news agencies pursuant to the Michigan Freedom of Information Act. On or about March 10, 2017, the MLive Media Group filed a lawsuit against the City of Grand Rapids in Kent County Circuit Court (Case No. 17-02205-CB) alleging the City has violated the Michigan Freedom of Information Act by not disclosing the five inadvertently recorded Line 3407 telephone calls between Janiskee, Ickes and Warwick on November 19, 2016.

21. The City, to avoid any conflict of interest, requested the MSP to conduct a criminal investigation on its behalf and turned over to them the audio tapes and transcripts of the telephone recordings. The MSP completed the investigation and turned over its findings to Prosecutor Getting.

**DECLARATORY ACTION REGARDING LAWFUL ABILITY  
TO USE THE FIVE INADVERTENTLY TAPED CONVERSATIONS  
OR TO RELEASE THEM TO OUTSIDE PARTIES**

22. The City incorporates by reference the allegations of Paragraphs 1-21.

23. The Federal Wiretapping Act prohibits the intentional interception and use of wire, oral, or electronic communications. 18 USC §2511(l)(a).

24. The Federal Wiretapping Act also prohibits the intentional disclosure to any person of the contents of any wire, oral, or electronic communication that was obtained through the intentional interception of a wire, oral, or electronic communication in violation of the Act. 18 USC §2511(l)(c).

25. The Federal Wiretapping Act states that any person who intentionally intercepts, uses, or discloses wire, oral, or electronic communication may be subject to preliminary and other equitable and injunctive relief, financial damages, punitive damages, and criminal penalties punishable by fines and imprisonment. 18 USC § 2511(4)(a); 18 USC § 2520(b)(2); 18 USC § 2520(c)(2).

26. The Federal Wiretapping Act is not violated if there is an inadvertent recording of a telephone call since the interception is not intentional. The recording of the five phone calls on Line 3407 by the City was inadvertent.

27. Certain exceptions to civil and criminal liability for the interception use, and disclosure of wire, oral, or electronic communications also exist under the Federal Wiretapping Act. For example, the Federal Wiretapping Act contains an exception for any interceptions made "by an investigative or law enforcement officer in the ordinary course of his duties." 18 USC §2510(5)(a)(i). There is also an exception for use in impeachment situations. This "law enforcement" exception and/or the "impeachment" exception may apply to the recordings at issue given the facts as described herein.

28. The Federal Wiretapping Act also states "[i]t shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the

communication has given prior consent to such interception . . . " 18 USC § 2511(2)(d). This "consent" exception may apply to the recordings at issue given the facts as described herein.

29.  The Michigan Eavesdropping Act provides that "[a]ny person who is present or who is not present during a private conversation and who willfully uses any device to eavesdrop upon the conversation without the consent of all parties thereto, or who knowingly aids, employs or procures another person to do the same . . . is guilty of a felony punishable by imprisonment . . . or by a fine of not more than $2,000, or both." MCL §750.539c.

30.  The Michigan Eavesdropping Act also makes it a felony for any person to divulge any information which he knows or reasonably should know was obtained in violation of the Michigan Eavesdropping Act.  MCL §750.539e.

31.  The Michigan Eavesdropping Act contains an exception for any "[e]avesdropping or surveillance not otherwise prohibited by law by a peace officer of this state or of the federal government, or the officer's agent, while in the performance of the officer's duties."  MCL §750.539g.

32.  The Michigan Eavesdropping Act provides for the following civil remedies: (a) an injunction to prohibit further eavesdropping; (b) all actual damages against the person who eavesdrops; and (c) punitive damages as determined by the court or jury. MCL §750.539h.

33.  The accidental recording of the five conversations on Line 3407 was not directed by the City or any of its officers or agents, and does not constitute an unlawful interception of communications under the Federal Wiretapping Act or the Michigan Eavesdropping Act.

34.  The Michigan Freedom of Information Act provides for the inspection and disclosure of "public records" upon submission of a FOIA request submitted to a public body or governmental agency.  MCL §15.233.

35. The Michigan Freedom of Information Act provides for penalties, such as civil fines, compensatory and punitive damages, attorney's fees, and litigation costs, in the event of a violation. MCL §15.240(7); MCL §15.240a(6), (7); MCL §15.240b.

36. The City has initiated disciplinary proceedings against the involved officers and, as part of that process, desires to use the telephone recordings of Line 3407 that are at issue as evidence in support of any disciplinary decisions, and in any subsequent grievance arbitration, or other legal proceeding involving the three police officers' conduct on November 19, 2016. The City, the GRPOA, and Officers Ickes and Warwick have resolved their dispute regarding disciplinary action, but disputes remain regarding Lieutenant Janiskee who was terminated on March 31, 2017.

37. The City's desire to use the Line 3407 telephone recordings in the police officers' disciplinary proceedings and potential arbitration hearings conflicts with the contentions of the GRPCOA and Lieutenant Janiskee that such use would violate the Federal Wiretapping Act and Michigan Eavesdropping Act.

38. The City is obligated to respond to the FOIA requests it has received in accordance with the time limits set forth in the Michigan Freedom of Information Act in order to avoid a violation of the FOIA.

39. The City has received a Subpoena from Daniel Empson's attorneys to produce the audio recordings and transcripts and has obligations to comply with any Subpoenas that have been issued and any decision in this case will impact on its obligation to respond to that Subpoena.

40. The MSP has received a FOIA request to produce the audio recordings and transcripts and thus, has obligations under FOIA regarding the release of the recordings, and its obligations will be impacted by any decision of this Court.

41. Prosecutor Getting has received a Subpoena from Daniel Empson's attorneys to produce the audio recordings and transcripts and has obligations to comply with any Subpoenas that have been issued and any decision in this case will impact on its obligation to respond to that Subpoena.

42. The documents and records in possession of the MSP, its Director, and Prosecutor Getting are the property of the City.

43. The widespread local media coverage, pending FOIA requests, filing of civil litigation by MLive and Mr. Empson, and related discovery requests from Daniel Empson will lead to recurring controversies over the City's obligations with respect to whether it may disclose the recordings under the Federal Wiretapping Act and State Eavesdropping Act.

44. The City desires to fully comply with its obligations under the FOIA and state court discovery requests regarding the release of these recordings, but also desires to fully comply with its obligations under federal and state wiretapping laws.

45. A genuine and justiciable controversy exists as the parties' rights and obligations with respect to the recordings under the Federal Wiretapping Act and the State Eavesdropping Act, and the issuance of declaratory relief by this Court will provide guidance regarding the existing dispute regarding the recordings.

46. In order for there to be a consistent approach in the disposition of the City's audio recordings and to prevent any violation of the applicable federal and state statutes, it is necessary to add the MSP Director and Prosecutor Getting as parties.

**WHEREFORE**, the City respectfully requests that the Court take the following actions:

    a. Advance this matter on the docket so that a prompt resolution of the matters in dispute can occur;

      b.    Enter an Order determining the rights and obligations of the City with respect to the recordings under the Federal Wiretapping Act and State Eavesdropping Act;

      c.    Enter an Order determining whether the recordings may be disclosed to others without violating the Federal Wiretapping Act and State Eavesdropping Act;

      d.    Enter an Order determining that the recordings may be used by the City without violating the Federal Wiretapping Act and State Eavesdropping Act; and

      e.    Enter an Order determining the rights and the obligations of the Michigan State Police Director and Jeffrey Getting of the Kalamazoo Prosecutor's Office with respect to the transcripts and recordings under Federal Wire Tapping Act and the State Eavesdropping Act.

      f.    Order such other relief as the Court deems just and equitable.

Respectfully submitted,

MIKA MEYERS PLC
Attorneys for City of Grand Rapids, David Rahinsky, Daniel Savage and David Kiddle

Dated: May 16, 2017      By: /s/Kurt M. Graham
    John H. Gretzinger (P28979)
    Scott E. Dwyer (P33131)
    Kurt M. Graham (P57190)
Business address:
    900 Monroe Ave., N.W.
    Grand Rapids, MI  49503
    (616) 632-8000