**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**
_____

**CITY OF GRAND RAPIDS**,

      Plaintiff/Counter-Defendant,

vs.

**GRAND RAPIDS POLICE COMMAND OFFICERS ASSOCIATION, MATTHEW JANISKEE**, **KRISTE KIBBEY ETUE-MICHIGAN STATE POLICE AND JEFFREY GETTING-KALAMAZOO COUNTY PROSECUTOR,**

Defendants,

and

**MATTHEW JANISKEE,**

      Counter-Plaintiff/Cross-Plaintiff/
      Third-Party Plaintiff,

vs.

**CITY OF GRAND RAPIDS**,

      Counter-Defendant,

**JEFFREY GETTING-KALAMAZOO COUNTY PROSECUTOR**,

      Cross-Defendants,

**DAVID RAHINSKY, DANIEL SAVAGE, DAVID KIDDLE, PETER McWATTERS, and DAVID SCHNURSTEIN**,

      Third-Party Defendants.
_____/

HONORABLE PAUL L. MALONEY

Case No. 1:17-cv-00113-PLM-RSK

MAG. RAY KENT

**CITY OF GRAND RAPIDS, DAVID RAHINSKY, DANIEL SAVAGE AND DAVID KIDDLE'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**ORAL ARGUMENT REQUESTED**

John H. Gretzinger (P28979)
Scott E. Dwyer (P33131)
Kurt M. Graham (P57910)
Mika Meyers, PLC
Attorneys for City of Grand Rapids, David
Rahinsky, Daniel Savage and David Kiddle
900 Monroe Ave NW Grand Rapids, Michigan
49503 (616) 632-8027

Andrew J. Brege (P71474)
Johnson, Rosati, Schultz, Joppich PC
Attorneys for Peter McWatters and David
Schnurstein
822 Centennial Way, Suite 270
Lansing, MI 48917
(517) 886-3800

Mark E. Donnelly (P39281)
Attorney for Kriste Kibbey Etue
Michigan Department of Attorney General
525 W. Ottawa St., Floor 5
P.O. Box 30736
Lansing, MI 48909-8236
(517) 373-6434
_____/

Andrew J. Rodenhouse (P73342)
Charles C. Newberg (P79025)
Rodenhouse Kuipers PC
Attorneys for Defendant Matthew Janiskee
678 Front Ave., NW, Suite 176
Grand Rapids, MI 49504-5300
(616) 451-4000

Timothy J. Dlugos (P57179)
White Schneider PC
Attorneys for GRPCOA
2300 Jolly Road
Okemos, MI  48864
(517) 349-7744

Amber D. Beebe (P66466)
Attorney for Jeffrey Getting
Kalamazoo County Office
of Corporate Counsel
Kalamazoo County Government
201 W. Kalamazoo Avenue
Kalamazoo, MI 49007
(269) 384-8111

ii

## TABLE OF CONTENTS

INDEX OF AUTHORITIES..................................................................................... iv

INTRODUCTION ................................................................................................ 1

    A.    Janiskee's Claims................................................................... 1

FACTUAL BACKGROUND ............................................................................... 2

    A.    The GRPD's Telephone Lines.............................................. 2

    B.    The GRPD's Response To A November 19, 2016 Automobile Accident.............. 3

    C.    GRPD Commences An Internal Investigation. ................................... 4

LAW AND ARGUMENT ..................................................................................... 6

    A.    Legal Standard ..................................................................... 6

    1.    FR Civ P 56........................................................................ 6

    B.    The Federal Wiretapping Act Does Not Prohibit Mistaken Recordings or Interceptions By A Law Enforcement Officer In The Ordinary Course of His Duties........................................................................... 7

    C.    The City and Counter-Defendants Did Not Intentionally or Willfully Record Any Line 3407 Conversations. ................................... 8

    D.    The Line 3407 Calls Were Intercepted In The Ordinary Course of Law Enforcement Business And, Therefore, Are Not Protected By Federal and State Wiretapping Laws. ................................................. 13

    E.    Since The Recordings Are Excluded Under The Ordinary Course of Law Enforcement Exclusion They Are Excluded For All Purposes Under The Federal and State Wiretapping Acts And May Be Lawfully Used And Disclosed To Others.............................................................. 16

    F.    Given Janiskee's Inability To Establish A Statutory Claim His Constitutional Claims Should Also Be Dismissed. ................................. 17

    G.    Counter-Defendants Rahinsky, Savage and Kiddle Are Entitled to Qualified Immunity............................................................... 19

REQUEST FOR RELIEF .................................................................................... 23

{02159563 1 }

# INDEX OF AUTHORITIES

**Cases**

*Abraham v. County of Greenville*,
    237 F.3d 386 (4th Cir. 2001) ..........................................................................14

*Adams v. City of Battle Creek*,
    250 F.3d 980, 986 (6th Cir. 2001) ........................................................... 20, 21

*Amati v. City of Woodstock*,
    176 F.3d 952, 954 (7th Cir. 1999) .......................................... 9, 15, 16, 17, 20

*Anderson v. Creighton*,
    483 U.S. 635, 639 (1987) ...............................................................................23

*Ashwander v. Tennessee Valley Authority*,
    297 U.S. 288, 347 (1936) ...............................................................................20

*Berry v. Funk*,
    146 F.3d 1003, 1013 (D.C. Cir. 1998).............................................................21

*Blake v. Wright*,
    179 F.3d 1003 (6th Cir. 1999) ........................................................... 16, 23, 24

*Bush v. Rauch*,
    38 F.3d 842, 847 (6th Cir. 1994) ...................................................................23

*Celetox Corp. v. Catrett*,
    447 U.S. 317, 323 (1986) .................................................................................7

*City of Milwaukee v. Illinois*,
    451 U.S. 304, 314 (1981) ...............................................................................21

*City of Ontario, Cal. v. Quon*,
    560 U.S. 746, 748, 130 S.Ct. 2619, 2623 (2010) .................................... 25, 26

*First v. Stark County Board of Commissioners*,
    234 F.3d 1268 (6th Cir. 2000) ........................................... 8, 9, 13, 14, 17, 22

*In re High Fructose Corn Syrup Antitrust Litigation*,
    216 F.3d 621, 625 (7th Cir. 2000) .................................................................18

*Jandak v. Village of Brookfield*,
　　520 F. Supp. 815, 824 (N.D. Ill. 1981) ........................................................18

*Leitman v. McAusland*,
　　934 F.2d 46, 50 (4th Cir. 1991) ....................................................................19

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp*.,
　　475 U.S. 574, 586-587 (1980) ........................................................................7

*Obron v. Atlantic Corp. v. Barr*,
　　990 F.2d 861, 863-64 (6th Cir. 1993)............................................................19

*Rice v. Gercar*,
　　77 F.3d 483 (6th Cir. 1996) ...........................................................................22

*Sanders v. Robert Bosch Corp*.,
　　38 F.3d 736, 742-43 (4th Cir. 1994)....................................................... 14, 24

*South Bend v. South Bend Common Council*,
　　Case No. 3:12-CV-475 JVB at 6  (ND Ind 2015) ................. 8, 11, 13, 14, 24

*United States v. Baranek*,
　　903 F.2d 1068 (6th Cir. 1990) .......................................................................22

*United States v. Giordano*, 416 U.S. 505, 514 (1974)...........................................8

*United States v. Hammond*,
　　286 F.3d 189, 193 (4th Cir. 2002) .................................................................19

*United States v. Head*,
　　586 F.2d 508, 513 (5th Cir. 1978) .................................................................19

*United States v. Howell*,
　　664 F.2d 101, 105 (5th Cir. 1981) .................................................................19

*United States v. Shields*,
　　675 F.2d 1152, 1157 n. 2 (11th Cir. 1982) ...................................................19

*United States v. Vaughn*,
　　1998 WL 774004, at *3 (6th Cir. 1998) ........................................................20

*Walden v. City of Providence*,
　　596 F.3d 38, 53-55 (1st Cir. 2010) ................................................................24

{02159563 1 }

*Walden v. City of Providence*,
    596 F.3d 38, 54 (1st Cir. 2010).................................................................................17

**Statutes**

18 U.S.C. § 2510(5)(1)(ii)..........................................................................................9

18 U.S.C. § 2510(5)(a)(i)..........................................................................................15

18 U.S.C. § 2511......................................................................................................19

18 U.S.C. § 2511(1)(a), (b)........................................................................................9

18 U.S.C. §2701(a)(1).................................................................................................9

42 U.S.C. § 1983.....................................................................................................20

Federal Wiretapping Act....................................... 8, 10, 12, 14, 15, 18, 19, 20, 21, 22

FR Civ P 12(b)(6), or 12(c)........................................................................................7

FR Civ P 12(c)............................................................................................................6

FR Civ P 12(d)............................................................................................................7

FR Civ P 56(a)............................................................................................................7

FR Civ P 56(c)(1)........................................................................................................8

FR Civ P 56(c)(2)........................................................................................................8

MCL 750.539c.............................................................................................................9

MCL 750.539g...........................................................................................................15

MCL 750.539g(a)......................................................................................................10

Michigan Wiretapping Act ........................................................................................9

{02159563 1 }

# **INTRODUCTION**

This matter involves five inadvertently recorded phone calls that were discovered during the course of the Grand Rapids Police Department's ("GRPD") internal investigation into the handling of an accident scene by GRPD Officers Matthew Janiskee ("Janiskee"), Adam Ickes ("Ickes"), and Thomas Warwick ("Warwick") on November 18-19, 2016. The Counter-Plaintiff, Janiskee ("Janiskee"), without any supporting evidence beyond his mere speculation, alleges in his eight Count Counter-Claim that the City of Grand Rapids (the "City"), through David Rahinsky ("Rahinsky"), Daniel Savage ("Savage"), and David Kiddle ("Kiddle"), (Rahinsky, Savage and Kiddle, collectively "the Counter-Defendants"), violated the Federal and State Wiretapping Acts, and his constitutional rights by intentionally recording and disclosing his conversations with Ickes and Warwick on GRPD telephone line (616) 456-3407 ("Line 3407").

### A. **Janiskee's Claims**

Janiskee's claims fail, however, because the evidence undisputedly shows that:

(1)     The five conversations on Line 3407 involving Janiskee, Ickes, and Warwick were inadvertently recorded by the City, and, therefore, do not satisfy the requirement of being "intentionally", or "willfully" intercepted. In fact, the City was not even aware that Line 3407 was being recorded until almost three weeks <u>after</u> the five telephone conversations had already been recorded. The City has not listened to, used, or disclosed any other recordings on Line 3407 beyond those five recordings since the other recordings were not germane to the City's ongoing internal investigation.

(2)     The five conversations on Line 3407 were made in the ordinary course of law enforcement duties since it is a routine police practice to record calls to and from a police department, particularly phone calls involving potential crimes, which is what prompted the five

Line 3407 conversations on November 19, 2016.  Therefore, the recordings are excluded from coverage and can be lawfully used and disclosed to others under the Federal and State Wiretapping Acts.

(3)      Defendants Rahinsky, Savage and Kiddle, as public officials, are entitled to qualified immunity because they acted reasonably and in good faith with respect to their accessing and handling of the five Line 3407 conversations.

# FACTUAL BACKGROUND

A.      **The GRPD's Telephone Lines**

The GRPD Watch Commander's Office and its Information Desk are always staffed and can be accessed by the public 24 hours a day, 7 days a week.  The City assigns a command officer to be on duty at all times as Watch Commander.  The on-duty phone in the Watch Commander's Office at the GRPD is (616) 456-3604 ("Line 3604") which is a publicly known and recorded line. The phone in the Watch Commander's Office also has access to phone number (616) 456-3407 ("Line 3407"), which is a non-public line whose number is not published to the general public.

(**Exhibit 1 – Rahinsky Declaration, ¶¶ 7-9.**)

City Administrative Policy 84-02, Section IV, B, provides that users do not have an expectation of privacy and that users expressly waive their right to privacy in anything they create, store, send, or receive on the City's Computer Resources, which is defined to included telephony and communications equipment.  The Policy further provides that "Users consent to allowing personnel of the City of Grand Rapids, as authorized by the City Manager, to access and review all materials that users create, store, send, or receive on the Computer Resources" and "Users understand the City of Grand Rapids may use human or automated means to monitor use of its Computer Resources."  (**Exhibit 1, Tab A, Rahinsky Declaration, ¶ 5.**).

The City intentionally records all incoming and outgoing calls to Line 3604.  The City did not intentionally record any calls to and from Line 3407.  Although Line 3407 was intended to be used for law enforcement purposes only, officers occasionally used it for personal calls.  Further, it is undisputed that GRPD officers were never told, or authorized to use Line 3407 to cover up any possible crimes being investigated by GRPD, or to secretly facilitate potential misconduct/neglect of duty by GRPD officers.  (**Exhibit 1, Rahinsky Declaration, ¶¶ 7-11.**)

**B.      The GRPD's Response To A November 19, 2016 Automobile Accident.**

At approximately 00:33 a.m. on the morning of November 19, 2016, GRPD Officer Adam Ickes was dispatched to a personal injury traffic crash at Union Avenue and Avalon Terrace in Grand Rapids.  The driver of the car, Josh Kuiper ("Kuiper"), had driven the wrong way down a one way street and had struck a parked car.  Kuiper identified himself to Ickes as a Kent County Assistant Prosecutor at the accident scene.

After having initial contact with Kuiper and prior to administering any sobriety tests, Ickes called the Watch Commander, Janiskee, on Line 3604 and explained that the driver was "hammered" and described him as "visibly intoxicated."  Janiskee advised Ickes to stop talking and call back on "3407."  The reference to 3407 was to the unrecorded phone line in the Watch Commander's Office, which, at that time, was labeled "Non Recorded Line 3407."  Line 3407, however, was inadvertently recording the subsequent telephone conversations (5 total) between Ickes, Warwick, and Janiskee while they were processing the accident scene.[1]  (**Exhibit 4, McWatters' Declaration, ¶¶ 11-15.**)

---

[1] While other Line 3407 calls have been inadvertently recorded, the City has only listened to the five recordings identified in its Amended Complaint Seeking Declaratory Relief.  There is no claim that Janiskee was making any personal phone calls, or trying to protect the identity of an informant during the five phone calls at issue.

Subsequent to the phone calls, Ickes did not request Kuiper to take a PBT test, issued him a citation for driving the wrong way down a one way street and Warwick then transported Kuiper to his home.  The UD-10 State of Michigan Traffic Crash Report submitted by Ickes noted that Kuiper had been drinking and was at fault for the crash.  (**Exhibit 2, Savage Declaration, Tab A.**).

### C.       GRPD Commences An Internal Investigation.

On or about December 5, 2016, Savage directed a review of the UD-10 State of Michigan Traffic Crash Report and the body camera footage from Ickes.  Savage also learned that Ickes had called his Watch Commander, Janiskee, soon after he had arrived at the accident scene.  (**Exhibit 2, Savage Declaration, ¶ 3.**)  After a review of this information a formal internal investigation was authorized by Rahinsky.

As an initial part of the internal investigation, a copy of the November 19, 2016 phone call to the recorded Watch Commander line (Line 3604) from Ickes to Janiskee was secured.  After reviewing information regarding that phone call, McWatters requested Schnurstein to determine if the 3407 extension in the Watch Commander's office had a record of incoming/outgoing calls.  After completing that assigned inquiry, McWatters was advised by Schnurstein that five calls had occurred on the unrecorded 3407 line subsequent to the initial call on the recorded 3604 line.  McWatters was also advised by Schnurstein that there were actually recordings of the unrecorded 3407 line.  McWatters immediately advised Kiddle, who in turn advised Savage and Rahinsky.  (**Exhibit 4, McWatters Declaration, ¶¶ 11-16.**)  (**Exhibit 1, Rahinsky Declaration, ¶¶ 12-15.**)  Prior to receiving that information, the City and the Counter-Defendants were not aware that Line 3407 was actually being recorded.  (**Exhibits 1-5, Declarations of Rahinsky, ¶ 18, Savage, ¶ 4, Kiddle, ¶ 3, McWatters, ¶ 16, Schnurstein, ¶ 3.**)

The five phone calls on Line 3407 that had been inadvertently recorded on November 18, 2016, include three from Ickes to Janiskee and two from Warwick to Janiskee. After receiving the advice of legal counsel, these five phone calls were reviewed as part of the GRPD's ongoing internal investigation.[2]  Subsequent to reviewing these phone calls, Rahinsky requested the Michigan State Police initiate an investigation into possible criminal actions of the officers.  The Kalamazoo County Prosecutor, who was delegated responsibility for conducting a criminal investigation, declined to pursue criminal charges against any of the GRPD officers.  Ickes and Warwick were, however, issued disciplinary action due to their misconduct and remain employed by GRPD.  Both officers have agreed to the release of their five inadvertently recorded phone calls with Janiskee on Line 3407, and waived any legal claims against the City relating to those conversations.  (**Exhibit 1, Rahinsky Declaration, ¶¶ 18-22, Tabs B and C.**).

Throughout the City's investigation of Janiskee's activities his union, the GRPCOA, has contended that the information contained in the five phone calls on Line 3407 could not be used in any disciplinary process or released in any form to outside parties on the basis that such actions would violate the Federal Wiretapping Act and the Michigan Wiretapping Act.

On February 3, 2017, the City filed a Complaint For Declaratory Relief seeking an Order determining the rights and obligations of the City with respect to the recordings under the Federal

---

[2] The Cisco phone system administrator, Martin Clason, was contacted and asked to determine how long Line 3407 had been recording phone conversations.  Mr. Clason determined there were calls dating back exactly two years that had been recorded on the Cisco phone system and he confirmed that two years was the retention length of recorded calls for the Cisco phone system.  Mr. Clason further examined the database of the phone system and concluded that Line 3407 had been recorded since February 21, 2014.  The database was created on September 27, 2013 for the Cisco phone system. Mr. Clason did not know if the Cisco system had been set to record prior to that and the phone system didn't indicate if it had been.  Mr. Clason was never directed by anyone at the City to record Line 3407, or set up the Cisco phone system to record Line 3407 calls.  (**Exhibit 6, Declaration of Clason.**)

Wiretapping Act and State Wiretapping Act and whether the recordings may be disclosed to others without violating the Federal Wiretapping Act and Michigan Wiretapping Act.[3]

On February 24, 2017, Janiskee filed an Answer and Class Action Counterclaims, Cross-Claims and Third–Party Claims against the City, Rahinsky, Savage, Kiddle, McWatters and Schnurstein.

Janiskee was terminated by the City on March 31, 2017.  A grievance protesting Janiskee's termination, which the City has denied during the grievance procedure, remains pending.

# LAW AND ARGUMENT

### A.    Legal Standard

### 1.    FR Civ P 56

Rule 56 motions are resolved based upon a review of the evidence that could be introduced at trial.  Although Janiskee has filed lengthy pleadings, he does not have significant substantively admissible evidence to support his defenses or his claims against the City and the Counter-Defendants. Therefore, this Court should grant summary judgment to the City of Grand Rapids and the Counter-Defendants on all claims that have been made against them.

The Federal Rules provide that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FR Civ P 56(a).  The Rules further provide that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits

---

[3] The City filed an Amended Complaint on February 17, 2017 dismissing Ickes, Warwick and GRPOA as Defendants.  The City filed a Second Amended Complaint on May 18, 2017 dismissing the Michigan State Police and adding as a party the Director of the Michigan State Police.

> or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
>   (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FR Civ P 56(c)(1). Evidence submitted to support or oppose a Rule 56 motion should be substantively admissible. FR Civ P 56(c)(2).

As the moving party, the City and the Counter-Defendants bear the initial burden of establishing the absence of a genuine issue of material fact. *Celetox Corp. v. Catrett*, 447 U.S. 317, 323 (1986). If they meet this burden, then Janiskee cannot rely upon the allegations in his pleadings, but must submit substantively admissible evidence to create a *genuine issue* of material fact. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586-587 (1980) (requiring production of "specific facts showing that there is a *genuine issue of material fact.*") (emphasis in original). If Janiskee fails to do so, then this Court should grant this Motion and enter judgment in favor of the City and the Counter-Defendants. *Celotex,* 477 U.S. at 322-323.

**B.    The Federal Wiretapping Act Does Not Prohibit Mistaken Recordings or Interceptions By A Law Enforcement Officer In The Ordinary Course of His Duties.**

The purpose of the Federal Wiretapping Act is "to prohibit . . . all interceptions of oral and wire communications, except those specifically provided for in the Act." *United States v. Giordano*, 416 U.S. 505, 514 (1974). The Federal Wiretapping Act prohibits a person from <u>intentionally</u> intercepting, or <u>intentionally</u> using any electronic, mechanical, or other device to intercept any oral communication . . . " 18 U.S.C. § 2511(1)(a), (b) (emphasis added). Therefore, if a plaintiff cannot establish an <u>intentional</u> interception there is no violation of the Federal

Wiretapping Act. [4]  *First v. Stark County Board of Commissioners*, 234 F.3d 1268 (6th Cir. 2000) (unpublished) (dismissing Wiretapping Act claim where defendants were unaware they were recording police dispatcher's conversations); *South Bend v. South Bend Common Council*, Case No. 3:12-CV-475 JVB at 6  (ND Ind 2015) (unpublished) ("inadvertent wiretappings do not violate the Wiretap Act . . .").

The phrase "electronic, mechanical, or other device" is defined as "any device or apparatus which can be used to intercept a wire, oral or electronic communication <u>other than</u> (a) <u>any telephone</u> or telegraph instrument, equipment, or facility, or any component thereof . . . (ii) being <u>used . . . by an investigative or law enforcement officer in the ordinary course of his duties.</u>"  18 U.S.C. § 2510(5)(1)(ii)(emphasis added).   Therefore, the Federal Wiretapping Act contains a "statutory exclusion of eavesdropping 'by an investigative or law enforcement officer in the ordinary course of his duties.'"  *Amati v. City of Woodstock*, 176 F.3d 952, 954 (7th Cir. 1999).  If a law enforcement officer intercepts an electronic communication in the ordinary course of his duties, there is no violation of the Federal Wiretapping Act.  *First, supra* at *4-5; *Amati, supra* at 955-56.[5]

### C.    The City and Counter-Defendants Did Not Intentionally or Willfully Record Any Line 3407 Conversations.

Janiskee's Counter-Claim is deficient because it only repeats the general elements of a Federal and State Wiretapping cause of action by alleging that the City and Counter-Defendants

---

[4] Likewise, Janiskee has no viable claim under the Michigan Wiretapping Act since it requires "willful" use of a device to eavesdrop.  MCL 750.539c.  Indeed, Paragraph 105 of Janiskee's Counter-Claim fails to include the "willful" requirement while alleging that the Defendants violated MCL 750.539c.  Janiskee also has no actionable claim under the Federal Stored Communications Act given that the statute requires a person to "intentionally" access an electronic communication service without authorization.  18 U.S.C. §2701(a)(1).

[5] There is no violation of the Michigan Wiretapping Act which includes a similar statutory exclusion permitting "[e]avesdropping or surveillance not otherwise prohibited by law by a peace officer of this state or the federal government, or the officer's agent, while in the performance of the officer's duties."  MCL 750.539g(a).

engaged in "intentional and illegal conduct." Janiskee's Counter-Claim merely consists of reciting statutory provisions of the federal and state wiretapping statutes and naked assertions that the City and Counter-Defendants have intentionally, or willfully recorded his Line 3407 conversations without any specific explanation or description of how the individual defendants, or City supposedly did so.

For example, there are no explicit factual allegations explaining how the City, or any of the named individual Counter-Defendants intentionally intercepted the Line 3407 calls. Instead, Paragraphs 61 through 69 of the Counter-Claim state allegations based solely upon Janiskee's "information and belief" that the City, through the individual Counter-Defendants, intentionally "programmed" the GRPD phone system to record all Line 3407 conversations, and the Counter-Defendants, as stated in Paragraph 69, "either knew that Line 3407 was being 'actively recorded'" before the five recordings were discovered by McWatters, or they "intentionally and deliberately" changed the destination path so the Line 3407 recordings would not be discovered. (Counter-Claim at Paras. 61-69).

In other words, Janiskee's basis for alleging the City and the Counter-Defendants knew or had reason to know that the Line 3407 calls were being "intentionally" recorded" prior to their discovery on December 7, 2016, is not supported by any actual evidence, but, rather, his speculation as to what may have happened. (Counter-Claim Paras. 61-69, 80). In fact, when he alleges in Paragraph 81 "[t]o the extent that the intentional interception of the electronic communications recorded on Line 3407 was done by some employee or agent of the GRPD other than [the individual named Counter-Defendants]", Janiskee acknowledges that he does not have any evidence showing who may have "intentionally" intercepted his Line 3407 calls, or how that person may have done so. (Counter-Claim Para. 81). There is simply no need for Janiskee to

speculate about who may have intercepted the Line 3407 conversations if he had evidence proving who was responsible, and showing how the calls were actually intercepted.

The actual evidence demonstrates that the City and the Counter-Defendants had no knowledge the Cisco system was recording any Line 3407 conversations until that information first became known to Schnurstein on December 7, 2016, during the City's internal investigation. (**Exhibits 1-6, Rahinsky Declaration, ¶¶ 16-17, Savage Declaration, ¶¶ 4-5, Kiddle Declaration, ¶¶ 3-4, McWatters Declaration, ¶¶ 16-18, Schnurstein Declaration, ¶¶ 3-4, Clason Declaration, ¶¶ 6-7.)** While the City acknowledges it intended to record calls on other GRPD phone lines, such as Line 3604, the City and the Counter-Defendants never intentionally or willfully intercepted, or intended to intercept any Line 3407 conversations. In fact, as Janiskee alleges, the City held out Line 3407 to be a "non-recorded line." (Complaint Para. 46). That Line 3407 was labeled "non-recorded" establishes that the City had no intention to record conversations on that phone line. As such, Janiskee cannot establish that the City and the Counter-Defendants intentionally or willfully intercepted a person's electronic communication in violation of Federal or State Wiretapping Act

Federal court decisions addressing a police department's mistaken recording of police officer conversations on department telephone lines support a finding that the City has not violated the Federal Wiretapping Act. In *South Bend v. South Bend Common Council*, Case No. 3:12-CV-475 JVB (ND Ind 2015), a federal district court held a mistaken recording does not constitute an "intentional" interception as required by the federal wiretapping act. In *South Bend*, the South Bend Police Department had a recording system capable of recording 48 phone lines. Due to limited capacity on the recording system, not all lines were recorded. It was common knowledge within the department through department policy and verbal discussions that the front desk and

communication center calls were being recorded.  Individual officer lines were also wired into the recording system but were not recorded unless the Chief of Police approved an officer's request to have his/her line recorded.

One of the officers, Chief Bishop, received approval to have his line, Line 6031, recorded after he received threats.  Bishop was later promoted to Division Chief and his 6031 line followed him to his new office.  Three years later (early 2007) Bishop was replaced by a new Division Chief, Steve Richmond.  Richmond had his old line transferred to his office and, during that transfer process, the recorded 6031 line was given to Brian Young, a new Captain in the Investigative Division, who occupied Richmond's old office.  Young never knew his line was being recorded and no one intended to record his phone line.

In late 2010, the recording system was experiencing crashes.  As part of the troubleshooting process, the Department Communications Director listened to recordings to determine if any data loss occurred.  During her reviews on February 4, 2011, she heard Young's voice on the 6031 line and overheard him making inappropriate comments.  Thereafter, Director continued to listen to conversations to determine if there was a malfunction of the system.  In March 2011, she told the Chief that Young's 6031 line was being recorded.  Thereafter, the Chief made a conscious decision to continue recording the 6031 line without Young's knowledge until Young determined in October 2011 that his line was being recorded.  Young requested the recording to stop but nothing was done.  The Chief then directed the Communications Director to preserve a series of eight recordings that occurred between February 4, 2011 and July 15, 2011.

On August 30, 2012 the City of South Bend filed a declaratory action to determine whether the eight recordings were obtained in violation of the Federal Wiretapping Act, and whether disclosure of the recordings violated the Federal Wiretapping Act.  The District Court found the

recordings of Line 6031 that were made on or before February 4, 2011, did not violate the Federal Wiretapping Act stating "On or before February 4, 2011, nobody intended to record Young's line. His line was recorded accidentally; in fact, not even the person who switched the lines knew of the mix-up. Since the recordings on or before February 4 do not satisfy the intentionality requirement of the Wiretap Act, they are not covered by the Wiretap Act." *South Bend*, at 5 (emphasis added).

In the instant case, the evidence demonstrates that neither the City nor any of the Counter-Defendants intended to record the Line 3407 calls; the five calls at issue were accidentally recorded. Neither the City nor the Counter-Defendants directed or ordered the Line 3407 calls to be recorded and, according to Janiskee, the representations being made to staff by the GRPD was that Line 3407 was a non-recorded line. (Counter-Claim ¶¶ 46, 50-51). Since Line 3407 was not intentionally recorded, *South Bend* supports a finding that there has been no violation of the Federal Wiretapping Act.

The same result was also reached by the Sixth Circuit in *First v. Stark County Board of Commissioners*, *supra*, when a Sheriff's Department inadvertently recorded its employees' conversations. In *First*, the Stark County Sheriff's Department recorded all incoming and outgoing radio dispatches and phone calls. The department later learned that the recording system was inadvertently recording all conversations through an open microphone on an open headset mike. During an investigation into an alleged mishandled 911 call, the department overheard a personal conversation between two of its dispatchers in addition to the 911 call. One of the dispatchers was suspended due to the recorded personal conversation. The dispatchers filed suit alleging a violation of the Federal and Ohio Wiretapping Acts.

The Sixth Circuit upheld the District Court's decision to dismiss the Plaintiff's wiretapping claim on grounds that the plaintiffs had produced no evidence that Defendants "intentionally" or

"purposely" recorded their personal conversations.  *Id.* at *4.  Since the Plaintiff has also not produced any evidence that Defendants intentionally, or purposely recorded his Line 3407 conversations, his wiretapping claims should be dismissed.  *Id.; South Bend, supra; Sanders v. Robert Bosch Corp.*, 38 F.3d 736, 742-43 (4th Cir. 1994)(holding that under the Federal Wiretapping Act, civil liability only attaches to intentional interceptions not inadvertent ones).

### D. The Line 3407 Calls Were Intercepted In The Ordinary Course of Law Enforcement Business And, Therefore, Are Not Protected By Federal and State Wiretapping Laws.

Even if there was an intentional interception, the Federal and State Wiretapping Acts permit an interception by a law enforcement officer in the ordinary course of his duties.  18 U.S.C. § 2510(5)(a)(i); MCL 750.539g; *Abraham v. County of Greenville*, 237 F.3d 386 (4th Cir. 2001) ("questions of whether the law enforcement exception applies and whether the County "intentionally intercepted" [a person's] communications are separate inquiries.").  There are no allegations of fact, or evidence that the Cisco System was installed so the City and the Counter-Defendants could spy on Janiskee, or any other individual's phone conversations on Line 3407, or that the Counter-Defendants monitored Line 3407 in order to spy on Janiskee, or any other employee's phone conversations.  There are also no allegations of fact, or evidence that any of the individual Counter-Defendants directed any City staff, or were directed by anyone to record, or monitor Line 3407 calls.  Instead, the City has accidentally recorded all phone conversations on Line 3407 using GRPD phone lines on the Cisco system since at least February 21, 2014 through December 8, 2016.[6]

The Seventh Circuit examined the ordinary course of law enforcement duties exception in a factually similar case, *Amati v. City of Woodstock*, 176 F.3d 952 (7th Cir 1999).  The Seventh

---

[6] The City has intentionally been recording Line 3407 since December 9, 2016.

Circuit held that the law enforcement exemption permitted the Woodstock Police Department to record a phone line used for personal calls without notifying the involved police officers.  The lawsuit filed by 63 individuals alleged that the police department violated the Federal Wiretapping Act by recording personal phone calls without advance notification.  The police department had advised employees that a single line, Line 338-7799, was the only line not tapped to record phone calls and that the line could be used for brief personal calls.

After a city council member's investigation was stymied by the fact that Line 338-7799 was not recorded, however, the police department decided to tape record all future calls but did not tell any employees.  The taping was discovered when an officer reviewing a tape heard one of the plaintiffs making derogatory comments about him and complained to the union.

The Seventh Circuit rejected the plaintiffs' argument that wiretapping cannot be in the "ordinary course of business" unless there is express notice to the people whose conversations are being listened to.  The Seventh Circuit found that the practice of recording all calls to and from a police department is a routine police practice and thus within the "ordinary course of business" for law enforcement.  Most significantly, the Seventh Circuit stated:

> That personal as well as official calls were made on the line is irrelevant; all employees make personal calls on company phones; if all the lines are taped, as is the ordinary practice of police departments, then the recording of personal as well of official calls is within the ordinary course.[7]  Although eventually the recording of calls on 338-7799 "caught" a plaintiff criticizing another member of the force, the purpose of recording calls on the line was not (or so at least a reasonable jury could find) to intimidate the people using the line.

---

[7] The Sixth Circuit Court of Appeals reached the same result in a case involving an Ohio police department that installed a system to record all incoming and outgoing phone calls.  Prior to installation of the recording system, employees were permitted to use non-emergency lines for unrecorded personal calls.  The police department did not inform employees it would record their personal calls on non-emergency lines and employees brought suit alleging a violation of the Ohio Wiretapping Law.  The Sixth Circuit found no violation of the Ohio Wiretapping Law and stated that simply because the police chief "allowed Plaintiffs to use the phone lines for personal calls does not change the fact that the phone lines were 'administrative' in nature.  The phones were intended and used for the purpose of carrying out the business of the police department.  Their occasional use for personal calls does not change their nature."  *Blake v. Wright*, 179 F.3d 1003 (6th Cir. 1999).

*Id*. at 956.

The pertinent question for determining whether the ordinary use exception applies is whether the Cisco equipment has been used by the GRPD in the ordinary course of law enforcement duties. The undisputed evidence demonstrates that the Line 3407 recordings at issue were obtained within the ordinary course of law enforcement duties. (**Exhibits 1, 2 and 4, Rahinsky Declaration, ¶¶ 11-22, Savage Declaration, ¶3, McWatters Declaration, ¶¶ 10-20.**) The City has used the Cisco system to record phone calls within the GRPD in order to assist officers with the performance of their duties and to more effectively investigate and solve crimes. "To record all calls to and from a police department is . . . a routine police practice. If the 'ordinary course' of law enforcement includes anything, it includes that." *Id*. at 955. "Such calls may constitute vital evidence or leads to evidence and monitoring them is also necessary for evaluating the speed and adequacy of the response of the police to tips, complaints, and calls for emergency assistance." *Id*. at 954. "The sparsity of case law on the question suggests not that the principle is dubious but that it is too obvious to have incited many legal challenges."[8] *Id*. at 955.

Not only were the Line 3407 recordings made in the ordinary course of law enforcement duties, but the recorded Line 3407 calls at issue undisputedly related to an ongoing law enforcement investigation into a possible crime. As such, the Line 3407 recordings should be excluded from the prohibitions of the Federal Wiretapping Act. *Id*.; *see also First, supra* at *4 (finding recordings were obtained in the ordinary course of law enforcement duties where "[i]t is

---

[8] While Janiskee appears to be alleging that wiretapping laws were violated because his right to privacy was invaded, *Amati* directly addressed this allegation by stating "[t]he invasion of privacy was regrettable, but if all Congress had cared about was the protection of privacy it would not have written an exception for electronic eavesdropping in the ordinary course of law enforcement into the statute . . ." *Id*. at 956. Similarly the Sixth Circuit rejected an argument that a purely personal conversation on a recorded police line is not subject to the ordinary course of law enforcement duties exclusion: "The pertinent question under the Act is whether the equipment itself is being used in the ordinary course of the law enforcement agency's duties; not whether the conversation recorded by the equipment relates to the law enforcement agency's duties." *First, supra* at *4.

undisputed that the STARCOM system was installed for the legitimate purpose of recording all incoming and outgoing calls to the "911" center, not to spy on a particular dispatcher."); *Walden v. City of Providence*, 596 F.3d 38, 54 (1st Cir. 2010)(dismissing wiretapping claim where city recorded all phone calls in and out of its municipal complex because the routine and universal recordings of phone lines by police departments is well known in the industry and public); *Jandak v. Village of Brookfield*, 520 F. Supp. 815, 824 (N.D. Ill. 1981)(routine recording of all calls on an investigative line was in the ordinary course of business and police chief's decision to listen to tapes to investigate officer misconduct was justified by law enforcement purpose).

  **E.** **Since The Recordings Are Excluded Under The Ordinary Course of Law Enforcement Exclusion They Are Excluded For All Purposes Under The Federal and State Wiretapping Acts And May Be Lawfully Used And Disclosed To Others.**

  The federal courts have also consistently held that any conversations excluded from coverage by 18 U.S.C. § 2511, such as through the ordinary course of law enforcement duties exclusion, are excluded for <u>all</u> purposes under the Federal Wiretapping Act.  In other words, a party may subsequently <u>use and disclose</u> excluded conversations, such as GRPD did during its internal investigation of Janiskee, without violating the Federal Wiretapping Act.  *See In re High Fructose Corn Syrup Antitrust Litigation*, 216 F.3d 621, 625 (7th Cir. 2000)("Section 2511 exempts the conversations covered by it from the entirety of Title III.  Since . . . the interception in the case was not obtained in violation of the Act, its subsequent use and disclosure was not a violation of the Act.")(citing *Obron v. Atlantic Corp. v. Barr*, 990 F.2d 861, 863-64 (6th Cir. 1993)(finding the use of tapes obtained pursuant to a Section 2511 exemption did not violate the Federal Wiretapping Act)); *Leitman v. McAusland*, 934 F.2d 46, 50 (4th Cir. 1991); *United States v. Shields*, 675 F.2d 1152, 1157 n. 2 (11th Cir. 1982); *United States v. Howell*, 664 F.2d 101, 105 (5th Cir. 1981); *United States v. Head*, 586 F.2d 508, 513 (5th Cir. 1978); *see also United States*

*v. Hammond*, 286 F.3d 189, 193 (4th Cir. 2002) (holding the FBI was free to use intercepted conversations because they were obtained pursuant to an exclusion under the Federal Wiretapping Act).

Since any subsequent use and disclosure of the Line 3407 recordings by the City, or any of the individual Counter-Defendants does not violate the Federal or State Wiretapping Acts, all claims relating to the alleged unlawful use and disclosure of the recordings should also be dismissed.

> **F.      Given Janiskee's Inability To Establish A Statutory Claim His Constitutional Claims Should Also Be Dismissed.**

Janiskee also claims that the recording and use of his Line 3407 conversations constitute an unreasonable "search and seizure" in violation of the Fourth Amendment actionable through 42 U.S.C. § 1983, and an invasion of his constitutional rights to privacy.[9]  (Counter-Claim ¶¶ 86-93; 121-136).  These claims fail for several reasons.  First, the claims should be dismissed because Supreme Court precedent establishes that courts should avoid unnecessary adjudication of constitutional issues.  *Adams v. City of Battle Creek*, 250 F.3d 980, 986 (6th Cir. 2001)(citing *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347 (1936)); *United States v. Vaughn*, 1998 WL 774004, at *3 (6th Cir. 1998).  Where a statutory or nonconstitutional basis exists for reaching a decision, as it exists here, it is not necessary to reach the constitutional issue.  *Adams, supra* at 986.

The Federal Wiretapping Act seeks to balance privacy rights and law enforcement needs, keeping in mind the protections of the Fourth Amendment against unreasonable search and seizure.

---

[9] Janiskee also alleges a common law invasion of privacy tort claim based upon his constitutional rights. (Counter-Claim ¶ 122).  The invasion of privacy tort claim should be dismissed for the reasons stated herein, namely Janiskee had no reasonable expectation of privacy in his use of Line 3407.  *Amati, supra*.

Congress made the Act the primary vehicle by which to address violations of privacy interests in the communication field. *Id.; Berry v. Funk*, 146 F.3d 1003, 1013 (D.C. Cir. 1998) (citing *City of Milwaukee v. Illinois*, 451 U.S. 304, 314 (1981)).  Janiskee makes no claim that his Fourth Amendment, or privacy rights, as they relate to wiretapping, are broader or more comprehensive than the Federal Wiretapping Act.  In other words, there is no difference between the conduct relevant to Janiskee's statutory claims and his constitutional claims.  Any decision by the Court to dismiss Janiskee's statutory claims should, therefore, be dispositive of his constitutional claims. *Adams, supra* at 986.

Second, the constitutional claims shows are not supported by sufficient evidence.  Janiskee had no reasonable expectation of privacy by virtue of City Policy 84-02 informing him that users do not have a reasonable expectation of privacy and that users waive their right to privacy in anything they create, store, send, or receive on the City's Computer Resources, including telephony and communications equipment.  (**Exhibit 1, Rahinsky Declaration, ¶ 5, Tab A.**) Even if there was a reasonable expectation of privacy, there was no violation of the Fourth Amendment, or Janiskee's privacy rights because the Counter-Defendants did not "intentionally" install the Cisco system for the sole purpose of recording or eavesdropping on Janiskee's personal conversations. *First, supra* at *5, 6 ("Inadvertent recordings, which, for the most part, Counter-Defendants had no knowledge even existed, do not constitute a search within the meaning of the Fourth Amendment."); *see also United States v. Baranek*, 903 F.2d 1068 (6th Cir. 1990); *Rice v. Gercar*, 77 F.3d 483 (6th Cir. 1996).  Accordingly, the Court should dismiss Janiskee's constitutional claims because they are without merit.

G.      **Counter-Defendants Rahinsky, Savage and Kiddle Are Entitled to Qualified Immunity.**

The Court should also dismiss the constitutional claims against Counter-Defendants Rahinsky, Savage, and Kiddle because they are entitled to qualified immunity.  Government officials are entitled to qualified immunity unless (1) "the alleged constitutional or statutory violations were 'clearly established' at the time of the alleged violations"; and (2) "a reasonable person in the defendant's position would have known that his or her actions violated clearly established rights." *Blake, supra* at 1007-08.

"A right is clearly established if there is binding precedent from the Supreme Court, the Sixth Circuit, or the district court itself, or case law from other circuits which is directly on point." *Id.* (citing *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994); *Barrett v. Harrington*, 130 F.3d 246, 264 (6th Cir. 1997)).  "Further, the contours of the right [must be] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Blake, supra* at 1007 (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

Janiskee has not alleged nor can he demonstrate a "clearly established" right to privacy in his Line 3407 phone calls at the time of the recordings.  As previously noted, Janiskee was advised by City policy that he had no expectation of privacy in his use of Line 3407.  The pertinent case law that is "on point" is also very certain.  At the time the Line 3407 recordings were discovered, factually similar court decisions have held that when a police officer's phone conversations are mistakenly recorded (even surreptitiously), a person may listen to, and use/disclose those conversations to others without violating a person's constitutional rights, or the Federal or Michigan Wiretapping Acts. *South Bend, supra; First, supra; Sanders, supra; Blake, supra.*  There is no contrary case law demonstrating that a police officer has a statutory or constitutional right to not have his mistaken recordings listened to, or disclosed to others during an internal police

investigation. Even if such case law exists, at most, the case law still remained "sufficiently uncertain" at the time the recordings were accessed by Counter-Defendants Rahinsky, Savage, and Kiddle. *Blake, supra* at 1008 (stating the existing case law must only be "sufficiently uncertain" to obtain qualified immunity).

Given the applicable case law, Counter-Defendants Rahinsky, Savage, and Kiddle, did not know or have a reason to know that their actions violated any clearly established statutory or constitutional rights.[10] *Blake, supra* at 1007-08; *Walden v. City of Providence*, 596 F.3d 38, 53-55 (1st Cir. 2010). Further, the evidence demonstrates Counter-Defendants Rahinsky, Savage, and Kiddle acted in a good faith, reasonable manner upon learning of the existence of the Line 3407 recordings. They did not hastily review the Line 3407 recordings upon discovering them but instead sought and followed the advice of the City's legal counsel before proceeding with their internal investigation. They also did not access any other recordings beyond the five Line 3407 recordings at issue, or otherwise eavesdrop, or monitor any conversations on Line 3407. None of them directed, or instructed anyone to record or monitor Line 3407 conversations either.

Counter-Defendants Rahinsky, Savage, and Kiddle acted reasonably because they accessed and shared the Line 3407 recordings with each other for an important and legitimate purpose. The City needed to review the contents of those conversations in order to conduct a thorough and fair investigation into Janiskee's potential misconduct. They only accessed and used the Line 3407 recordings for those limited and legitimate purposes.

The *City of Ontario, Cal. v. Quon*, 560 U.S. 746, 748, 130 S.Ct. 2619, 2623 (2010), establishes that Counter-Defendants Rahinsky, Savage and Kiddle acted reasonably and

---

[10] As found by the U.S. Supreme Court, there is no such thing as a generalized constitutional right of privacy. *Paul v. Davis*, 424 U.S. 693 (1976).

establishes that the special needs of the government work place is an exception to the warrant requirement.  As found in the *City of Ontario*, the special needs of government work places is an exception to the warrant requirement.  To qualify for such an exception, the search has to be (1) motivated by a legitimate work-related purpose which can be noninvestigatory or for the investigation of work-related misconduct, and (2) the search cannot be excessive in scope.  In *City of Ontario*, the police department gave its S.W.A.T. team pagers with text message capabilities for work-related communication.  When the City found that it was paying contract overages, the City obtained the transcripts from its service provider for a two month period to see if the messages were personal or work-related.  For Quon, many were not work-related and, in fact, sexually explicit, for which he was disciplined.  Quon argued that the search violated his Fourth Amendment rights.  The Supreme Court rejected the argument.  In so holding, the Supreme Court assumed, without deciding, that Quon had a reasonable expectation of privacy in his texts, but the Court also found that the reasonableness of the government of Quon's expectation of privacy in communication equipment used while on duty is impacted by a variety of factors, including performance evaluations, litigation concerning the lawfulness of police actions, and perhaps, compliance with state open-law records such as FOIA.  *See, City of Ontario*, 560 U.S. at 758.

Ultimately, the Supreme Court held the search was reasonable because it was justified at the outset, for purposes of reviewing the City's data needs, (i.e., is the current contract sufficient or should it be expanded), and, (2) was it limited in scope, (i.e., a sampling of a two month period in which the officer went over the data limit.)

Comparably, in the instant case, the City Administrative Policy 84-02, which states that:

> "City employees have no reasonable expectation of privacy in the use of the City's computer resources and, further, the City may monitor the use of computer resources which is defined to include telephone."

Furthermore, in the instant case, this was a police phone and a police phone system.  As found in *City of Ontario*,

> "As a law enforcement officer, he would or should have known that his actions were likely to come under legal scrutiny, and that this might entail an analysis of this on-the-job communications."  *City of Ontario,* 560 U.S. at 762.

While Janiskee and everyone else thought that Line 3407 was not recorded and they would use this line in situations in which it was necessary to contact the Watch Commander, but not record the call, (e.g., to get ahold of an Officer because he or she needs to be notified of a family emergency), however, everyone knew that the other City lines were and are recorded as a routine matter of course such as Line 3604.

Furthermore, the communications made by Janiskee were made on a desk phone which sat on a work desk that is operated by a number of employees (any command staff working the Watch Commander assignment), as opposed to the office phone used and designated to only one employee.

Finally, the search was very limited to five phone calls, and the only calls that were reviewed were the calls made at or near the time of the incident in question when all the Officers were on duty and involved in the incident.  The retrieval was appropriately targeted to further the work-related investigation based upon the contents of the first recording on Line 3604, which everyone knew that Line 3604 was recorded, which is obvious based upon Janiskee's statements to hang up and call on Line 3407.

It is also obvious from the first and abruptly ended Line 3604 call is that all the employees would be discussing GRPD-related business, namely the handling of an on-scene investigation of property damage and a personal injury accident involving an Assistant Prosecutor.

Since there was no "clearly established constitutional right" at the time Counter-Defendants Rahinsky, Savage, and Kiddle accessed the Line 3407 recordings, and they acted reasonably with respect to their access and disclosure of the Line 3407 recordings, they are entitle to qualified immunity.  The statutory and constitutional claims against them should be dismissed.

## <u>REQUEST FOR RELIEF</u>

The City of Grand Rapids and Counter-Defendants Rahinsky, Savage, and Kiddle respectfully request the Court to dismiss Janiskee's Counterclaims in their entirety, with prejudice. The City also requests the Court to enter a declaratory judgment determining that the City's inadvertent recording of Line 3407 does not violate the Federal or State Wiretapping Acts and that the Ordinary Course of Law Enforcement Exclusion applies to all of the recordings at issue.

Respectfully submitted,

MIKA MEYERS PLC
Attorneys for City of Grand Rapids, David Rahinsky,
Daniel Savage and David Kiddle

Dated:  June 15, 2017

By:  /s/ Scott E. Dwyer
    John H. Gretzinger (P28979)
    Scott E. Dwyer (P33131)
    Kurt M. Graham (P57910)
Business address:
    900 Monroe Ave., N.W.
    Grand Rapids, MI  49503
    (616) 632-8000